IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

TRAYCE WILLIAMS                                                                      PLAINTIFF

v.                                  No. 4:23-cv-505-DPM

GREENE COUNTY, ARKANSAS;
KATHERINE CALAWAY, both in her
Individual and Official Capacity, as
Prosecutor;  SONIA FONTICIELLA, in her
Individual and Official Capacity as
Prosecuting Attorney for the Second
Judicial District of Arkansas and Greene
County;  STEVE FRANKS, in his
Individual Capacity;  SHANNON
ANTHONY, Chief Deputy, in his
Individual Capacity;  JUSTIN JACKSON,
Captain, in his Individual Capacity;
BRAD SNYDER, Sheriff, in his Official
Capacity as Sheriff of Greene County,
Arkansas;  and ZAKK CROCKER, in his
Individual Capacity                                                                    DEFENDANTS

## ORDER

The Greene County Sheriff's Department fired Trayce Williams based on an unfavorable letter it received from a state deputy prosecutor. He has sued the county, several Sheriff's Department officials, the deputy prosecutor, and her boss. He presses various violations of his federal and state constitutional rights, plus a separate claim against the county under Arkansas's Whistle-Blower Act.

The defendants have filed separate motions to dismiss his amended complaint. Williams attached many exhibits to his amended complaint, *Doc. 29*. The Court has considered them along with his pleaded facts. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014). Here are those facts, accepted as true, with all reasonable inferences drawn in Williams's favor. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010).

\*

Williams worked for the Greene County Sheriff's Department for a bit more than a year. He was a deputy, serving as a K-9 officer during the last several months of his employment. His dog was named Ronin.

In August 2022, Katherine Calaway—a deputy prosecutor for Arkansas's Second Judicial District—received "three phone calls" about one of Williams's traffic stops. *Doc. 29 at 19*. Based on the calls, and after watching a "snippet" of Williams's body-camera video, Calaway drafted a *Giglio* letter outlining her concerns about Williams's job performance, the integrity of his cases, the honesty of his probable cause, and his K-9 handling. *Doc. 29 at 4 & 19*. (Under *Giglio v. United States*, prosecutors have a duty to disclose all matters affecting the credibility of state witnesses. 405 U.S. 150, 153-55 (1972).) Before she finalized the letter, she sent a draft to Sheriff Franks, Chief Deputy Anthony, Captain Jackson, and Sergeant Zakk Crocker (Williams's direct supervisor). They had seen the full video; she hadn't. *Doc. 29 at 5*. Each one told her that her letter accurately described the stop. *Ibid.*

She never notified or spoke to Williams.  And she did not review Williams's personnel file.

Based on the officers' assurances, and the information before her, Calaway sent a final copy of her letter to the Sheriff's Department.  It concluded:  "I will not file any civil forfeiture where Deputy Trayce Williams is involved."  *Doc. 29 at 19-20*.  Sheriff Franks fired Williams the next day, citing Calaway's letter as the reason.  *Doc. 29 at 63*.

Calaway now concedes that her letter is inconsistent with the full video.  *Doc. 29 at 6*.  Williams offers three theories for why that is.  One is that she lied about what the officers told her.  *Doc. 29 at 5*.  Another is that the officers lied to her.  *Ibid.*  There was, it's alleged, a plot to oust Williams based on his refusal to follow his supervisor's orders two months earlier.  According to Williams, Sergeant Crocker had ordered him to skip "mandatory K-9 trainings" and to "call alerts for his dog when he should not."  *Doc. 29 at 2*.  When Williams refused, Crocker got angry and threatened his job.  Williams then complained to Sheriff Franks about Crocker's conduct.  Sergeant Crocker found out about Williams going to the Sheriff.  *Doc. 29 at 3*.  Crocker also "corralled other officers" into making false statements about Williams and put those in his file "as though he had been disciplined."  *Ibid.*  At some point, this theory goes, Sheriff's Department officials decided to mislead Calaway about the traffic stop so Sheriff Franks could use her letter as a pretext for firing Williams.  *Ibid.*  The third theory—

a variation on the second—is that Calaway and the officers "were in cahoots with each other[,]" and out to get Williams. *Doc. 57 at 1*; *Doc. 67 at 1*; *Doc. 80 at 1*. In this variation, no one lied; everyone involved colluded.

*

Some preliminaries.

*First*, Williams only sues Brad Snyder (the new Sheriff) in his official capacity. Those claims are really against Greene County. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). The claims against Snyder are therefore dismissed without prejudice; and he is dismissed as a defendant.

*Second*, Williams hasn't stated a solid § 1983 claim against Greene County. He hasn't identified a county policy or custom that was the moving force behind the constitutional violations he alleges. *Watkins v. City of St. Louis*, 102 F.4th 947, 954 (8th Cir. 2024). Because Sheriff Franks's employment decisions were subject to the quorum court's review, he didn't have final policymaking authority on employment matters. *Compare Thompson v. Shock*, 852 F.3d 786, 793-95 (8th Cir. 2017), *with* GREENE CO., AR., CODE OF ORDINANCES ch. 2, art. IV, § 240 (Am. Ord. 2015-007). Neither did Fonticiella— an elected *state* prosecutor. *Doc. 29 at 141*. Absent an official policy, an isolated incident like the one Williams alleges "cannot, as a matter

of law," establish an unofficial custom creating liability under § 1983. *Watkins*, 102 F.4th at 954.

*Third*, Williams's official capacity claims against Fonticiella and Calaway are really against the State of Arkansas, not Greene County. *Will v. Michigan Department of State Police*, 491 U.S. 58, 70-71 (1989). They're barred by Eleventh Amendment sovereign immunity. He can't sue for money damages. *Andrus ex rel. Andrus v. Arkansas*, 197 F.3d 953, 955 (8th Cir. 1999). And *Ex Parte Young*'s exception for prospective injunctive relief doesn't apply. 209 U.S. 123 (1908).

"Under the *Ex Parte Young* doctrine, a private party can sue a state officer in his official capacity to enjoin a prospective action that would violate federal law." *Church v. Missouri*, 913 F.3d 736, 747 (8th Cir. 2019). This doctrine applies if the complaint alleges: "[1] an ongoing violation of federal law and [2] seeks relief properly characterized as prospective." *Church*, 913 F.3d at 747-48 (alteration original and quotations omitted). Williams seeks an injunction requiring the prosecutor's office to institute a notice-and-hearing policy for *Giglio* letters, to cleanse its records of Calaway's letter, and to retract Calaway's letter. *Doc. 45 at 11*. The problem, though, is that he has not alleged an ongoing violation of federal law. Williams says Calaway should have notified him before she sent her letter. But even if that's correct, he has only alleged a past violation. *Compare Elder v. Gillespie*, 54 F.4th 1055, 1062-63 (8th Cir. 2022)

(finding an ongoing due process violation where plaintiffs' Medicaid coverage was at risk of being terminated without sufficient notice), *with Filyaw v. Corsi*, 2024 WL 4135877, at *7-8 (D. Neb. 9 Sept. 2024) (finding no ongoing due process violation where plaintiff's Medicaid coverage had already been terminated). Williams alleges ongoing *effects* of Calaway's letter—that it "destroyed his career." Doc. 29 at 14. But the "lingering effects of that discrete past action do not convert it into an ongoing *violation*." *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (emphasis added).

*Fourth*, Williams has abandoned his individual capacity claims against Fonticiella. Doc. 45 at 11. Because the official capacity claims against her have dropped out, she's dismissed as a defendant.

\*

That leaves Williams's individual capacity claims against Calaway and the Sheriff's Department officials, plus his claim against Greene County under Arkansas's Whistle-Blower Act.

**First Amendment Retaliation.** To state a plausible claim here, Williams must allege three things: protected activity, an adverse employment action, and a causal relationship between the two. *Lyons v. Vaught*, 781 F.3d 958, 961 (8th Cir. 2015). The parties mostly argue about the protected speech element—whether Williams's refusal to follow Crocker's orders, and his opposition to calling false K-9 hits, was official-duty speech under *Garcetti v. Ceballos*, 547 U.S. 410 (2006).

Williams gives little context to this exchange. But, as the Court of Appeals has emphasized, a public employee's First Amendment retaliation claim is not doomed at the Rule 12(b)(6) stage simply because he failed to allege facts sufficient to conduct a *Garcetti* analysis. *Lyons*, 781 F.3d at 962. Either way, even if Williams's speech was protected, his claims still fail at the third element—causation.

Williams pleads no facts showing that Calaway, Jackson, or Anthony knew about his exchange with Crocker. *Lyons*, 781 F.3d at 962-63. Nor has he connected the dots between Crocker and Sheriff Franks. He says Crocker threatened his job after he refused to follow orders. But Crocker didn't fire him. Sheriff Franks did, two months later, after he had received Calaway's *Giglio* letter. It's unclear why Sheriff Franks would fire Williams for refusing Crocker's orders, because those orders contradicted Sheriff Franks's orders that Williams attend mandatory K-9 trainings. *Doc. 29 at 2*. And while Williams complained to Sheriff Franks about Crocker's conduct, he doesn't allege that he was fired in retaliation for making the complaint. Williams says the letter was pretextual, and that Crocker, Sheriff Franks, and others orchestrated it by misleading Calaway. *Doc. 29 at 3*. That's possible. But he doesn't allege "specific facts" suggesting that there was a "meeting of the minds" between the conspirators. *Murray v. Lene*, 595 F.3d 868, 870 (8th Cir. 2010); *see also Faulk v. City of St. Louis*, 30 F.4th 739, 747-48 (8th Cir. 2022). And the inferential leaps needed to

get from point A (the refusal) to point B (the firing) are too far. At bottom, Williams has not plausibly alleged that his refusal to follow Crocker's orders was the "but-for cause" of Sheriff Franks's decision to fire him. *Beard v. Falkenrath*, 97 F.4th 1109, 1119 (8th Cir. 2024).

**Procedural Due Process.** Williams's procedural due process claims are dismissed for the following reasons.

*First*, Williams's embedded motions to dismiss his due process claims against Crocker and Jackson, *Doc. 67 at 2 & Doc. 80 at 2*, are granted. Fed. R. Civ. P. 41(a)(2).

*Second*, Williams hasn't plausibly alleged that Anthony and Sheriff Franks deprived him of a protected liberty interest. (Williams helpfully clarified in his responses that he's only claiming a protected liberty interest in his reputation, not a protected property interest in his job. *Doc. 45 at 24; Doc. 57 at 2*.) There is no contention that Anthony made a public, stigmatizing statement about Williams in connection with Williams's discharge. *Correia v. Jones*, 943 F.3d 845, 848-49 (8th Cir. 2019). And although Sheriff Franks referenced the *Giglio* letter in his termination letter, he did not purport to assess Williams's character or conduct independently. *Correia*, 943 F.3d at 849. The mere reference to Calaway's letter, without more, isn't enough to deprive Williams of a protected liberty interest in his reputation. *Ibid.*

*Last*, the parties scuffle over whether Calaway's *Giglio* decision is entitled to absolute prosecutorial immunity. That question is open for

debate.  *Compare LaCoe v. City of Sisseton*, 2022 WL 17485843, at *5-6 (D.S.D. 7 Dec. 2022), *aff'd on other grounds*, 82 F.4th 580 (8th Cir. 2023), *with Stockdale v. Helper*, 979 F.3d 498, 502-06 (6th Cir. 2020).  How that issue might sort out, though, is academic for this case.  That's because, even if Calaway's decision was not rooted in her core prosecutorial duties, she is still entitled to qualified immunity for actions taken "in an investigatory or administrative capacity."  *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996) (quotations omitted).

Williams argues that § 1983 abolished qualified and prosecutorial immunity.  *Doc. 45 at 12-19*.  Another Judge of this Court recently considered a substantially similar argument from Williams's lawyer in a separate case.  *Doc. 91 at 3* in *Thomas v. Culclager*, Case No. 4:20-cv-1486-LPR (E.D. Ark. 2024).  I agree with Judge Rudofsky's assessment of this argument.  Williams makes "a very sophisticated and serious argument that" § 1983 eliminated qualified immunity.  *Ibid.*  I likewise agree that this Court is bound by the Supreme Court's and the Eighth Circuit's prior holdings on this issue.  Williams's no-qualified-immunity argument fails based on binding precedent.

Is Calaway's *Giglio* decision entitled to qualified immunity? Yes. The right at issue here—whether a state prosecutor's *Giglio* letter implicates a local law enforcement officer's liberty interest—is not clearly established.  One important question concerns the lack of an employer/employee relationship between Williams and Calaway.

-9-

"The right to a name-clearing hearing protects the employee's liberty interest in his or her good name and reputation, and it prevents a public *employer* from depriving an *employee* of that interest without due process." *Speer v. City of Wynne*, 276 F.3d 980, 984 (8th Cir. 2002) (emphasis added). Others are whether, and how, this kind of liberty interest squares with prosecutors' constitutional duties under *Giglio*. Williams cites no precedent, and the Court knows of none, which places this "constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017). Calaway is, at a minimum, entitled to qualified immunity.

**State Claims.** In the absence of any federal question, the Court declines supplemental jurisdiction over Williams's state law claims. *Hunter v. Page County*, 102 F.4th 853, 871-72 (8th Cir. 2024).

\* \* \*

**1.** Motions to dismiss, *Doc. 35, 49, 64, & 72*, granted.

**2.** The Court has considered whether to grant Williams's embedded requests to amend his complaint again if necessary. *Doc. 45 at 27; Doc. 57 at 21; Doc. 67 at 12; Doc. 80 at 13*. Those requests are denied for several reasons. Fed. R. Civ. P. 15(a). First, this case is more than twenty months old. It's time for the pleadings to come to rest and for claims to be addressed. Second, the Court allowed Williams to conduct early discovery and amend with the benefit of that discovery. He did so. His amended complaint was comprehensive and detailed. The Court doubts whether more could be added at this point.

Third, the case is not over. Williams has his state claims. If the record develops in Williams's favor on any federal claim where there was a pleading problem, rather than an insurmountable legal problem, then he can seek permission to amend under Arkansas's liberal standard. Ark. R. Civ. P. 15(a).

3. The Court remands Williams's case to the Circuit Court of Pulaski County, Arkansas. 28 U.S.C. § 1367(c); *Lindsey v. Dillard's, Inc.*, 306 F.3d 596, 598-99 (8th Cir. 2002).

So Ordered.

*DPMarshall Jr.*
D.P. Marshall Jr.
United States District Judge

18 October 2024